**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR12-01384-PHX-DGC |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Dariusz Krawczyk, | |
| Defendant. | |

Defendant Dariusz Krawczyk has filed a motion to suppress. Doc. 44. The motion is fully briefed (Docs. 45, 47, 55, 56), and the Court held an evidentiary hearing on April 3, 2013. Following the hearing, Defendant filed a motion to depose two witnesses. Doc. 68. That motion is also fully briefed. Docs. 69, 71. For the reasons that follow, the Court will deny the motion for depositions, grant the motion to suppress in part, and deny the motion to suppress in part.

I.     **Motion for Depositions.**

Defendant asks the Court for permission to depose Jack Tsou, an officer of U.S. Customs and Border Protection ("CBP"), and Jenny Chen, an employee of Peace Express, Inc., the company Defendant retained to assist him in importing a pill-making machine from China. Alternatively, Defendant asks the Court to order their attendance at a further evidentiary hearing. The government opposes Defendant's motion on the ground that Defendant has failed to show exceptional circumstances to justify the depositions under Federal Rule of Criminal Procedure 15(a) because there is no factual dispute warranting the additional discovery.

Depositions in criminal cases "are not allowed merely for the purpose of discovery." *United States v. Rich*, 580 F.2d 929, 933-34 (9th Cir. 1978). "A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). "The district court retains broad discretion in granting a Rule 15(a) motion, and considers the particular circumstances of each case to determine whether the exceptional circumstances requirement has been satisfied." *United States v. Omene*, 143 F.3d 1167, 1170 (9th Cir. 1998) (quotation marks and citations omitted).

Defendant argues that the warrant affidavit provided by Agent Erin Hager of the Drug Enforcement Agency ("DEA") was intentionally misleading in asserting that Defendant, when asked to provide information to CBP in order to complete importation of the pill-making machine, "forwarded an unrelated Air Waybill documenting the shipment of a tableting machine that had been successfully importuned and delivered to an associate of Krawczyk in October 2007." Doc. 44-1 at 7. Defendant submits that the implication of this statement is that he provided the 2007 Air Waybill to CBP as an importing document. Defendant argues that this implication was intentionally misleading and that discovery is necessary to establish how CBP actually obtained the Waybill. Defendant further argues that Agent Hager misled the Court at the evidentiary hearing when she suggested that the waybill had been provided to CBP by Peace Express as part of the importation process.

After hearing testimony at the evidentiary hearing, reviewing exhibits marked at the hearing, and reviewing Defendant's request for depositions and the briefing and exhibits related to that request, the Court reaches several conclusions. First, the manner in which the Waybill came into the possession of CBP is not in dispute. Second, Defendant provided the Waybill to Peace Express during efforts to complete importation of the pill-making machine. Third, Defendant's accusations of bad faith and government misconduct, although based on some factual inaccuracies in affidavits and the hearing

1    testimony, greatly overstate the seriousness of the government's conduct in this case.

2        Attached to Defendant's motion is an email chain in which the government
3    confirms how CBP obtained the 2007 Air Waybill.  Doc. 68-1.  The government admits
4    that Peace Express sent the Waybill to CBP in response to Agent Jack Tsou's request for
5    the complete file of Peace Express.  Doc. 69 at 8.  Exhibits attached to the government's
6    response brief confirm these facts.  Docs. 69-1 through 69-5.  Thus, there is no dispute
7    that CBP requested, and Peace Express provided, a copy of the Waybill.  No deposition is
8    needed to establish this fact.

9        It is also undisputed that Peace Express received the Waybill from Defendant.
10   Although Defendant initially denied that he was the source of the Waybill and even
11   implied that it might be a forgery, he now admits that he provided the Waybill to Peace
12   Express, his agent in securing importation of the pill-making machine.  *See* Doc. 71 at 2.
13   And Defendant does not dispute that he provided the Waybill to Peace Express while it
14   was in the process of attempting to complete importation of the pill-making machine.

15       Given these facts, the Court is fully equipped to evaluate Defendant's claims of
16   government bad faith.  The Court has before it the actual facts concerning the Waybill, as
17   well as the affidavit provided by the government to obtain the tracking warrant and the
18   testimony of Agent Hager at the evidentiary hearing.  Depositions of Jenny Chen and
19   Agent Tsou would provide no additional relevant information.  As a result, Defendant has
20   failed to establish extraordinary circumstances warranting Rule 15 depositions.[1]

21   **II.    Motion to Suppress.**

22       The Court will address Defendant's claims of government bad faith in connection
23   with the other arguments raised in his motion to suppress.

24       **A.    Seizure of the Machine in California.**

25       The government alleges that Defendant sought to import a pill-making machine in

26   _____

27   [1] Defendant vaguely cites *Brady v. Maryland*, 373 U.S. 83 (1963), and argues that
     the government is required to disclose information about how CBP Officer Tsou obtained
28   the Waybill.  The government has provided that information, and Defendant otherwise
     has failed to show that the government is withholding exculpatory evidence.

order to manufacture illegal drugs.  The machine was shipped from China to the United States, where it was stopped by CBP in Long Beach, California.  Believing that the machine may be entering the United States for illegal purposes, CBP contacted the DEA. On April 11, 2011, DEA Agent Erin Hager traveled to Long Beach with another law enforcement officer to learn more about the machine.  As a result of this meeting and related investigations, Agent Hager decided to take possession of the machine and apply for and obtain a tracking device warrant on April 15, 2011.  The tracking device was installed on the machine in accordance with that warrant, and the machine was delivered for pick-up in Phoenix, Arizona, its ultimate destination.  Defendant contends that DEA's seizure of the machine violated the Fourth Amendment.

Agent Hager testified without contradiction at the evidentiary hearing that the CBP took possession of the machine in Long Beach because the machine lacked documents to clear customs.  She further testified that DEA completed documentation required to obtain possession of the machine from CBP.  Exhibit 61, which was received in evidence during the hearing, contains the documentation executed by DEA in order to take possession of the machine from CBP.  Agent Hager returned to Phoenix with the machine, obtained a warrant, a tracking device was installed, the machine was delivered to the warehouse where it was ultimately destined to be shipped, and Defendant picked up the machine at the warehouse.

Defendant presented no evidence to suggest that the machine was improperly stopped by CBP.  Nor did he present evidence to contradict Agent Hager's testimony that DEA acquired the machine from CBP.  The Court cannot conclude that Defendant had a reasonable expectation of privacy in a machine being shipped in international commerce, *see United States v. Ani*, 138 F.3d 390, 392 (9th Cir. 1998) ("there can be no constitutional violation for the border search of incoming international mail by a customs inspector" (citing *United States v. Ramsey*, 431 U.S. 606, 619-23 (1977) (holding that the border-search exception to the warrant requirement applies to international mail)), for which Defendant was required to submit a report of importation.  21 C.F.R. § 1310.05(c)

1    (requiring person who imports a tableting machine to file a report of importation); *see*
2    *also United States v. Hoang*, 486 F.3d 1156, 1159 (9th Cir. 2007) ("What a person
3    knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.")
4    (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)).  Defendant also did not have a
5    possessory interest in the package.  *Hoang*, 486 F.3d at 1160 ("an addressee's possessory
6    interest is in the timely delivery of a package, not in having his package routed on a
7    particular conveyor belt, sorted in a particular area, or stored in any particular sorting bin
8    for a particular amount of time."); *see also United States v. Jefferson*, 566 F.3d 929, 935
9    (9th Cir. 2009).  Because the Court cannot conclude that Defendant had a possessory
10   interest or a reasonable expectation of privacy in the machine, DEA's acquisition and
11   transport of the machine did not violate his Fourth Amendment rights.

12                      **B.    Duration of the Tracking Warrants.**

13            A tracking device was installed in the machine pursuant to a warrant obtained
14   from a United States Magistrate Judge based in Phoenix.  The warrant permitted the
15   tracking device to be monitored for 60 days.  A subsequent warrant authorized 60 more
16   days of monitoring, and three more warrants each authorized 90 days of monitoring.  As
17   Defendant notes and the government concedes, these warrants violated Federal Rule of
18   Criminal Procedure 41(e)(2)(C).  That provision states that a warrant must specify a
19   reasonable length of time that a tracking device may be monitored, not to exceed 45 days.

20            "Evidence is suppressed only when there has been a 'fundamental' violation of
21   Rule 41 – one which involves a constitutional violation.  A 'technical' violation of the
22   Rule requires suppression only if there was a deliberate disregard of the rule, or if the
23   defendant was prejudiced."  *United States v. Latu*, 208 Fed. Appx. 585, 586 (9th Cir.
24   2006) (internal quotation marks and citations omitted); *United States v. Johns*, 851 F.2d
25   1131, 1134 (9th Cir. 1988) (same).  Rule 41(e)(2)(C)'s 45 day time limit may delineate a
26   constitutional requirement.  *See United States v. Bailey*, 628 F.2d 938, 945 (6th Cir.
27   1980) ("a warrant which places no time limit on the search or seizure it purports to
28   authorize is invalid") (citing *Berger v. New York*, 388 U.S. 41, 59-60 (1967)); *United*

*States v. Brock*, 667 F.2d 1311, 1322 (9th Cir. 1982) (disapproving unlimited beeper surveillance); *but see United States v. Butts*, 357 Fed. Appx. 850, 850-51 (9th Cir. 2009) (violation of Rule 41(e)(2)(A)(i)'s requirement that a warrant be executed within a specified time does not amount to a fundamental violation).  Accordingly, the Court will grant the motion to suppress with respect to all signals emitted by the tracking device and monitored by the United States beyond the initial 45 days of each warrant issued in this case.  The Court will not suppress monitoring completed within 45 days of the issuance of each warrant because there is no evidence that the warrants' technical violation of authorizing more time than is allowed under Rule 41 was the result of a deliberate disregard of the rule or that Defendant was otherwise prejudiced by the violation.  Defendant has not shown that signals monitored by the government beyond the 45 day period of any warrant led to the discovery of other evidence, and thus the Court concludes that no further suppression is warranted on the basis of this Rule 41 violation.

### C.     Tracking Device Signals.

Defendant argued in his motion to suppress that the tracking device was activated when the pill-making machine was turned on, and that this fact enabled the government not only to track the location of the machine, but also to determine when it was being operated.  The device was installed by DEA Agent Jerry Benhase.  Agent Benhase testified at the evidentiary hearing that the tracking device was connected to a constant power source within the machine and was activated whenever the machine was plugged into an electrical source.  Thus, signals emitted by the tracking device did not reveal when the machine was being operated – they merely revealed when the machine was connected to a power source.  Given this testimony, which the Court found credible, Defendant's argument that the device produced information beyond the scope of the warrant is unpersuasive.

### D.     Pole Cameras.

Agent Hager provided testimony concerning five pole cameras used during the investigation.  The first camera was installed at a residence at 102 West Coronado in

Phoenix and operated for 92 days.  The second camera was installed at Defendant's residence and operated for just under one year.  The third and fourth cameras were installed to observe the front and back doors of a warehouse (where the tracking device was located) and operated for periods of 51 and 252 days, respectively.  The fifth camera was installed at a second residence where the pill-making machine was located and operated for approximately two weeks.

Relying on *United States v. Jones*, 132 S. Ct. 945 (2012), Defendant contends that the pole cameras violated his Fourth Amendment rights.  Defendant compares the extended use of pole cameras to the 28-day use of a GPS tracking device in *Jones*, and argues that the pole camera surveillance was as invasive as the GPS monitoring in *Jones*.

Although some of the concurring justices in *Jones* noted that long-term GPS monitoring may raise Fourth Amendment concerns, the majority limited its analysis to the trespassory nature of the GPS installation, refusing to establish a point at which uninterrupted surveillance might become constitutionally problematic.  *Id*. at 954.  Courts generally hold that pole cameras mounted in public areas, monitoring scenes that could be observed by any person in those areas, do not raise Fourth Amendment concerns.  *See United States v. Brooks*, No. CR 11-2265-PHX-JAT-003, 2012 WL 5984804, at *4-7 (D. Ariz. Nov. 28, 2012) (law enforcement's warrantless use of pole camera to observe the "comings and goings" at an apartment complex did not violate the Fourth Amendment); *United States v. McIver*, 186 F.3d 1119, 1125-26 (9th Cir. 1999) (placement of unmanned, motion-activated cameras in a remote area of a national forest without search warrant, to obtain photographs of defendants visiting and harvesting marijuana plants, did not violate defendant's reasonable expectation of privacy protected by the Fourth Amendment), *overruled on other grounds in Jones*, 132 S. Ct. 945 (2012).  Given this authority, the Court rejects Defendant's argument.

### E.    Obtaining the 2007 Air Waybill.

Defendant argues that a warrant was required before CBP could obtain documents Defendant provided to Peace Express.  Doc. 71 at 4.  Defendant has not established that

1  he had a reasonable expectation of privacy in such documents, including the Waybill.

2  Generally, persons to not have a reasonable expectation of privacy in information

3  transmitted to third parties as part of a business transaction.  *Smith v. Maryland*, 442 U.S.

4  735, 743-44 (1979) ("a person has no legitimate expectation of privacy in information he

5  voluntarily turns over to third parties."); *United States v. Miller*, 425 U.S. 435, 442-44

6  (1976).  Accordingly, the Court cannot find that CBP violated the Fourth Amended when

7  it requested that Peace Express provide it with copies of documents Defendant had

8  provided to Peace Express.

9        **F.**      **Validity of the Tracking Warrant Affidavit.**

10        Defendant contends that the tracking warrant affidavit was flawed in several

11  respects.  Defendant suggests that the officers who executed the affidavit intentionally or

12  recklessly misled the magistrate judges who reviewed the warrant applications.

13  Defendant also argues that the magistrate judges "rubber stamped" the application and

14  failed to conduct a critical review of the affidavit.  This latter argument is based primarily

15  on the fact that the warrants authorized monitoring beyond the time period allowed by

16  Rule 41.  The Court will address Defendant's various affidavit arguments.

17        The affidavit asserted that records of the Arizona Department of Economic

18  Security ("DES") show that Defendant had no means of personal income, while also

19  noting that he had claimed the loss of valuable jewelry through a theft at his home.  The

20  affidavit suggested that an individual with no established source of income would not be

21  able to acquire such jewelry, implying that Defendant was making money through illegal

22  means.  Defendant does not argue that the statement about the DES records was incorrect,

23  and the Court cannot conclude that the affidavit's reference to DES records was

24  misleading.  Although Defendant is correct that DES records do not capture all possible

25  sources of income, they certainly capture a broad category of income, and the facts

26  contained in the affidavit were relevant to probable cause.

27        The affidavit stated, accurately, that Defendant had been convicted of a drug

28  trafficking offense in 2000 and had been placed on probation.  Defendant contends that

this information was stale when the affidavit was executed in 2011, but Defendant's prior conviction was not the primary factual basis for the requested warrant. The affidavit sought a warrant on the basis of information about the pill machine that had been collected in April 2011, just days before the warrant was sought. The statement about Defendant's prior drug conviction was relevant background information that contributed to probable cause, and the Court cannot conclude that it rendered the otherwise current affidavit information stale.

The first affidavit submitted for a warrant stated that toll records revealed that Defendant's telephone was used to call the number of an individual in Las Vegas who recently had been arrested for drug trafficking. The affidavit asserted that Defendant's phone called this number more than any other. Agent Hager testified at the evidentiary hearing that she based this assertion in the affidavit on information she received from an analyst who reviewed the toll records, but she later discovered the information was inaccurate when she reviewed the toll records herself. The records showed that Defendant's phone had been used to call a number which was also called frequently by the Las Vegas drug dealer, but not to call the drug dealer directly. Agent Hager corrected this fact in the affidavit submitted for the second tracking warrant.

This factual error does not defeat probable cause. There was a connection between Defendant's phone and the phone of the drug trafficker – they both called a common number frequently. Taken in the context of all other information contained in the affidavit, as will be explained later in this order, this change in the facts is not significant.

Defendant complains about the affidavit's recitations regarding the 2007 Air Waybill. The Waybill reflected the importation of a pill-making machine by an individual in the mid-west. The affidavit implies that Defendant submitted the Waybill to CBP as part of the necessary shipping documents. In fact, Defendant submitted the Waybill to Peace Express, the agent he had hired to assist in the importation of his machine. Peace Express apparently realized that the Waybill was not related to

1   Defendant's machine and eventually obtained the necessary documents from Defendant

2   for the importation.  CBP obtained the Waybill only after asking that Peace Express send

3   everything it had on file about Defendant.  After learning that the Waybill had been

4   provided by Defendant, Agent Hager asserted in the affidavit that the individual in the

5   mid-west was an "associate" of Defendant and recounted various facts she had learned

6   about the individual.  These included that the individual had arranged for the importation

7   of four pill-making machines into the United States, each through different ports, and that

8   one of the machines had been seized by the government because of suspicious

9   circumstances.  Agent Hager further asserted that this pattern of shipping items through

10  different ports is referred to as "port shopping" and is an activity often undertaken by

11  individuals shipping products into the United States illegally.  The implication of Agent

12  Hager's assertions was that Defendant was associated with a person who had imported

13  pill-making machines into the United States for the purpose of making illegal drugs.

14      Agent Hager admitted during the evidentiary hearing that her only basis for

15  connecting Defendant to the individual in the mid-west was the fact that Defendant had

16  emailed the 2007 Air Waybill to Peace Express.  The fact that Defendant had the

17  Waybill, and sent it to Peace Express, caused Agent Hager to assume that Defendant was

18  somehow associated with the individual who was shipping the machine at issue in the

19  Waybill.  After investigating this individual, and learning of his previous attempts to ship

20  pill-making machines into the United States, Agent Hager concluded that this was

21  relevant information for the warrant affidavit.  She admitted that she had no other basis

22  for connecting Defendant to the individual in the mid-west, that she was unable to find

23  any criminal convictions for that individual, and that she did not know why that

24  individual was shipping pill-making machines into the United States.

25      The Court finds that Agent Hager overstated the connection between Defendant

26  and the mid-west individual when she referred to that individual as an "associate" of

27  Defendant.  The Court does not conclude, however, that Agent Hager acted in bad faith,

28  either in her assertions about the associate or in her suggestion that Defendant had

provided the Waybill directly to CBP.  As noted above, Defendant does not dispute that he provided the Waybill to Peace Express.  Defendant thus was in possession of a shipping document used by an individual in the mid-west who had imported pill-making machines on four previous occasions through four different ports, with one machine having been seized by the government, and Defendant provided it to Peace Express in connection with efforts to import the pill-making machine at issue in this case.  Agent Hager was incorrect in her assertion that Defendant provided the Waybill directly to CBP, but he did provide it to the agent he had retained to provide documents to CBP.  The Court does not find this error by Agent Hager to be indicative of bad faith or a deliberate attempt to mislead the magistrates.  Defendant and his counsel have themselves shown confusion during this briefing process concerning the precise circumstances under which the Waybill was provided and the somewhat confusing email chain involved.  The Court cannot conclude that similar confusion on the part of Agent Hager reflects bad faith.

With the various factual inaccuracies identified by Defendant corrected, the Court concludes that the affidavit still would show probable cause.  The affidavit would include the following accurate facts:  a pill-making machine was being imported to the United States by Defendant; it is unusual for individuals, rather than companies, to import such machines; Defendant had not made required notifications to the DEA regarding importation of the machine; the machine contained no identifier, such as make, model, or serial number; Defendant had a 10-year old history of possession of Ecstasy and LSD and was the target of a previous DEA investigation which resulted in his conviction and three years of probation; Ecstasy is commonly sold and consumed in tablet form; a pill-making machine is required to manufacture Ecstasy tablets; when recently arrested for DWI, Defendant was in possession of prescription controlled substance pills for which he had no prescription; Defendant's phone records reveal that he frequently contacted a phone number that was also frequently contacted by an individual who recently had been arrested for his role in a poly-drug trafficking organization; DES records revealed

Defendant reported no income; Defendant was able to pay for the purchase of the pill-making machine appraised at $2,100, plus the costs of importation; Defendant reported to law enforcement in 2009 that $76,000 worth of designer sunglasses, designer clothing, jewelry, firearms, and electronics were stolen from his home; individuals involved in the illegal sale of controlled substances often have no reportable income while at the same time possessing items such as designer firearms, jewelry, and clothing; investigations identified three potential residential addresses for Defendant, one listed on his driver's license, one linked to a utility check in his name, and one that was reported on documentation created in connection with the pill-making machine; surveillance at these three locations had not resulted in positive identification of Defendant; Defendant used a post office box for his mail; the company assisting Defendant with the importation informed agents that Defendant did not want the machine delivered to his house or business, but instead wanted to pick it up at a warehouse when it arrived in Phoenix. Doc. 44-1 at 7-9.  These facts created a "fair probability" that Defendant was importing the pill-making machine for illegal purposes.  As a result, even if the inaccurate information is redacted from the affidavit, probable cause supported issuance of the tracking device warrant.

**IT IS ORDERED** that Defendant's motion to suppress (Doc. 44) is **granted in part and denied in part** as set forth above.

**IT IS FURTHER ORDERED** that Defendant's motion for discovery and depositions (Doc. 68) is **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from January 29, 2013.

Dated this 10th day of June, 2013.

David G. Campbell
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28